# UNITED STATES EX· REL. TEXAS PORTLAND CEMENT COMPANY *v.* McCORD.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 234.   Argued March 6, 1914.—Decided April 6, 1914.

When the purpose of Congress is stated in such plain terms that there is no uncertainty, and no construction is required, it is unnecessary to inquire into the motives which induced the legislation. The only province of the courts in such a case is to enforce the statute in accordance with its terms.

Limitations specified in the statute creating a new liability are a part of the right conferred and compliance therewith is essential to the assertion of the right conferred by the statute.

An amendment dates back to the filing of the petition and is to supply defects in the petition with reference to the cause of action then existing, or at most to bring into the suit grounds of action which did exist at the beginning of the case.

Under the act of August 13, 1894, as amended by the act of February 24, 1905, a materialman or laborer may not bring suit on the contractor's bond in the Federal court in the name of the United States for his use and benefit, within six months from completion and settlement, even though the United States has not asserted any, and has no, claim against the contractor or his sureties.

Where the original bill was prematurely filed, an intervention after the six month, and before the twelve month, period is not effectual as such or as an original bill.

An amended bill filed more than one year after completion of the work and settlement, if treated as an original bill, is filed too late.

THE facts, which involve the construction of the materialman's act of February 24, 1905, and the rights of contractors thereunder, are stated in the opinion.

*Mr. Francis Marion Etheridge,* with whom *Mr. Joseph Manson McCormick* was on the brief, for the relators, Texas Portland Cement Company *et al.*

*Mr. Charles W. Starling,* with whom *Mr. W. F. Robertson* was on the brief, for McCord and National Surety Company of New York.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here upon a certificate from the United States Circuit Court of Appeals for the Fifth Circuit. The pertinent facts certified are:

The United States upon the relation and for the use and benefit of the Texas Portland Cement Company and others brought suit in the United States Circuit Court for the Northern District of Texas, on January 3, 1910, against D. C. McCord, as the principal, and the National Surety Company of New York, as surety, on a certain bond dated March 19, 1906, given in conformity to the act of February 24, 1905 (c. 778, 33 Stat. 811), for the performance by McCord of a contract for the erection of certain public works for which they had furnished labor and material. The petition was filed after the completion of the contract and final settlement between the contractor and the United States, and it was alleged that the United States had no claim or cause of action against the defendants and would not bring suit within six months from the completion and settlement of the contract, nor at any other time. An appropriate order for service and publication was had. Many creditors intervened in the case, among others W. Illingsworth, who on May 25, 1910 (more than six and less than twelve months after final completion and settlement) filed an intervention in accordance with the act, which constituted a complete bill, purporting to be also for the benefit of the plaintiffs in the

original suit and others intervening in the cause, and in which he prayed, if the recovery on the bond should be inadequate to pay all claims in full, for a *pro rata* judgment.

Subsequently, on January 9, 1911, the original plaintiffs filed an amended original petition, elaborating the allegations of their original petition and averring among other things that the Government had no claim against the defendants and therefore had not within six months from the completion and settlement of the contract, brought suit against them, and did not have the legal right to maintain such suit, except upon the relation of a creditor. Illingsworth dismissed his intervention on February 2, 1911, and thereafter the court ordered that his petition and petition in intervention be dismissed.

The allegations of the petition were sustained by proof, and a plea in abatement filed by the Surety Company was heard upon an agreement and statement in open court to the effect that the contract was completed on October 12, 1909, and settlement was made on November 11, 1909, and that the Government thereafter neither had nor asserted any claim, demand or cause of action against the defendants on the contract or bond. The Circuit Court thereupon dismissed the suit, and the case was taken to the Circuit Court of Appeals upon error.

The questions certified are:

"First. Under the provisions of the Act of August 13, 1894 (28 Stat. 278), as amended by the Act of February 24, 1905 (33 Stat. 811), may persons, who furnish material and perform labor in the construction of governmental works, bring suit, on the bond of the contractor in the Federal Court in the name of the United States for their use and benefit, within six months from the completion of the works and final settlement of the contract, where it appears of record and was agreed by the parties in open court, that after performance and settlement of the contract, the United States neither had nor asserted any

claims, demands or cause of action either against the contractor or the sureties on his bond?

"Second. If the original bill was prematurely filed, was a right of action saved to the parties; so filing the same, by the intervention of Illingsworth, which was filed after the six months but before the expiration of the twelve months' period, and the amended bill, filed more than one year after the completion and settlement of the contract between the Government and the contractor?"

The differences in the act of February 24, 1905, and the former statute of August 13, 1894, c. 280, 28 Stat. 278, were pointed out by this court in the case of *Mankin* v. *Ludowici-Celadon Co.*, 215 U. S. 533, and need not be repeated here. The act of 1905 [1] provides that the persons

─────────

[1] That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed *pro rata* among said interveners. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the Department under the direction of which said work has been prosecuted that labor or materials for the prosecution of

named as beneficiaries under the bond may intervene and have their rights adjudicated in an action instituted by the United States in which priority of claim is to be given to the United States for any judgment recovered in the case. It is also provided that, "if no suit should be brought by the United States within six months from the completion and final settlement of said contract," then the persons supply-

such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action and shall be, and are hereby, authorized to bring suit in the name of the United States in the circuit court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: And provided further, That where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor *pro rata* of the amount of the recovery. The surety on said bond may pay into court, for distribution among said claimants and creditors, the full amount of the sureties' liability, to wit, the penalty named in the bond, less any amount which said surety may have had to pay to the United States by reason of the execution of said bond, and upon so doing the surety will be relieved from further liability: Provided further, That in all suits instituted under the provisions of this Act such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the State or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor.

VOL. CCXXXIII—11

ing labor, etc., upon taking certain steps to get a certified copy of the bond, "are hereby authorized to bring suit in the name of the United States," etc., provided that suits by creditors of the contractor "shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later." And it is further provided "that where suit is so instituted by a creditor or creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later." It is further provided that in all suits instituted under the act such personal notice of the pendency of the suit shall be given as the court may order, informing known creditors of their right to intervene, and newspaper publication, to serve as notice of pendency of the suit to other creditors, shall also be made.

By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. The right of action given to creditors is specifically conditioned upon the fact that no suit shall be brought by the United States within the six months named, for it is only in that event that the creditors shall have a right of action and may bring a suit in the manner provided. The statute thus creates a new liability and gives a special remedy for it, and upon well settled principles the limitations upon such liability become a part of the right conferred and compliance with them is made essential to the assertion and benefit of the liability itself. *Pollard* v. *Bailey*, 20 Wall. 520, 526–7; *Bank* v. *Francklyn*, 120 U. S. 747, 756; *Globe Newspaper Co.* v. *Walker*, 210 U. S. 356; *United States* v. *Boomer*, 183

Fed. Rep. 726 (Circuit Court of Appeals for the Eighth Circuit).

The purpose of Congress to give the United States the exclusive right to bring suit within six months is stated in terms too plain to be mistaken or to require construction, because of any possible uncertainty in their meaning. When this is so it becomes unnecessary to inquire into the reasons which induced the legislation. It may be that Congress wished to give the Government six months in which to test the work and fully ascertain its character and whether it fulfilled the contract or not. Whatever the motive, the language used clearly expresses the legislative intention and admits of no doubt as to its meaning. This being so, it is only the province of the courts to enforce the statute in accordance with its terms. *Lake County* v. *Rollins*, 130 U. S. 662, 670; *United States* v. *Lexington Mill Co.*, 232 U. S. 399, 409.

We think, therefore, that the action was prematurely brought, in view of the facts stated in the certificate. This view of the statute was also taken in a well considered opinion in the Circuit Court of Appeals for the Third Circuit. *Stitzer* v. *United States*, 182 Fed. Rep. 513.

As to the intervention of Illingsworth, in which, it is claimed, other creditors' claims were incorporated: without passing upon the effect of the dismissal of Illingsworth's intervention, we fail to see that this mends the matter. The right to intervene is given in the statute when the action is brought by the United States, and the creditors may have their rights adjudicated in such action. And in the case of an action begun by a creditor in accordance with the statute, the right to file a claim is given to creditors. These rights to intervene and to file a claim, conferred by the statute, presuppose an action duly brought under its terms. In this case the cause of action had not accrued to the creditors who undertook to bring the suit originally. The intervention could not cure this vice in the

original suit. Nor do we think that the intervention could be treated as an original suit. No service was made or attempted to be had upon it, as required by the statute when original actions are begun by creditors. As we read the certificate, the intervention was what it purported to be, an appearance in the original suit, already brought, and in our view must abide the fate of that suit.

As to the effect of the filing of the amendment by the original plaintiffs on January 9, 1911, it is elementary that an amendment dates back to the filing of the petition and is to supply defects in the cause of action then existing, or at most to bring into the suit grounds of action which existed at the beginning of the case. In this case there was no cause of action to amend. Nor was the amendment of January 9, 1911, the introduction of a new cause of action existing at the beginning of the suit. See in this connection, *American Bonding & Trust Co.* v. *Gibson County*, 145 Fed. Rep. 871 (Circuit Court of Appeals for the Sixth Circuit, opinion by Mr. Justice Lurton). If this amended petition can be regarded as an intervention in a pending suit, and it is contended that it may be, it was too late, as it was filed more than a year after the final settlement under the contract to which time such rights of action are limited by the statute. *Eberhart* v. *United States*, 204 Fed. Rep. 884. The same objection would lie if the amended petition could be regarded as the bringing of an original suit. See *Baker Contract Co.* v. *United States*, 204 Fed. Rep. 390.

*It follows that both questions certified must be answered in the negative.*