413 F.2d 376
 JOSEPH F. HUGHES & CO., Inc., and Reliance Insurance Company, Appellants,
v.
DISTRICT OF COLUMBIA for the Use and Benefit of NOLAND COMPANY, Inc., and Flowers School Equipment Co., et al., Appellees.
DISTRICT OF COLUMBIA for the Use and Benefit of NOLAND COMPANY, Inc., and Reading Steel Products, Inc., Appellees,
v.
JOSEPH F. HUGHES & CO., Inc., and Reliance Insurance Company, Appellants.
 No. 22168.
 No. 22246.
 United States Court of Appeals District of Columbia Circuit.
 Argued January 23, 1969.
 Decided April 18, 1969.
 
 Mr. Stephen S. Boynton, Washington, D. C., with whom Messrs. John P. Arness and Peter F. Rousselot, Washington, D. C., were on the brief, for appellants.
 Mr. Francis J. Pelland, Washington, D. C., with whom Messrs. Marvin P. Sadur and Herman M. Braude, Washington, D. C., were on the brief, for appellees.
 Before FAHY, Senior Circuit Judge, and BURGER and TAMM, Circuit Judges.
 FAHY, Senior Circuit Judge:
 
 
 1
 On August 10, 1964, appellant Joseph F. Hughes & Co., Inc., referred to as Hughes, entered into separate contracts with the District of Columbia for the construction of the Daniel C. Roper Junior High School and the Louis Charles Rabaut Junior High School. Hughes and appellant Reliance Insurance Company, as surety, referred to as Reliance, delivered to the District of Columbia statutory performance and payment bonds in the amounts of the contract prices. The bonds were to secure payment for labor and materials furnished to Hughes. Appellees Flowers School Equipment Co. and Reading Steel Products, Inc., referred to respectively as Flowers and Reading, furnished materials and labor to Hughes. Neither has been paid in full.
 
 
 2
 Under 1 D.C.Code § 804 (1967) set forth in pertinent part in the margin,[1] creditors of a general contractor, Hughes here, are permitted to bring suit on such bonds for amounts due. Noland Company, Inc., a creditor, in June 1967, did file suit on both bonds. Flowers sought to intervene in the Roper case and Reading in the Rabaut. Hughes and Reliance opposed the interventions on the ground the claims were filed later than a year from the date of final settlement.[2] In the Roper case the year expired December 14, 1967. Flowers filed its intervening complaint in that case December 21, 1967. The one year expired in the Rabaut case January 12, 1968, followed by Reading's intervening complaint filed February 1, 1968. The District Court allowed both Flowers and Reading to intervene and granted to each summary judgment against Hughes and Reliance in the amounts claimed. Hughes and Reliance appeal, No. 22168 in the Roper case, and No. 22246 in the Rabaut case. We affirm.
 
 
 3
 Under Section 804, note 1, supra, in addition to such personal notice as "the court may order," notice by publication is required, "for at least three successive weeks, the last publication to be at least three months before the time limited therefor." The last of the three published notices in the Roper suit appeared December 4, 1967, and in the Rabaut suit December 5, 1967.[3] Thus, in each case one year from the date of completion and final settlement arrived before the expiration of the three months from the last publication.[4]
 
 
 4
 Flowers and Reading accordingly did not receive before the year elapsed a notice which met the terms of the statutory language. It is in this light that we consider the contention of appellants that Section 804 precludes these creditors from filing their claims later than one year from the date of final settlement, though filed within the time contemplated by the notice provision.
 
 
 5
 Materialmen were to have the assistance of published notice in ascertaining whether a suit had been filed in which they could intervene.[5] And the ordinary meaning of the language providing for such notice allows a creditor three months from the last publication within which to assert his claim. This meaning should be given effect unless it must be ignored because of an overriding statutory policy represented by the conflicting period of one year within which a claim may be filed. That limitation and the three months notice provision cannot both stand unimpaired where, as here, the claim is filed within the time given by the notice but after the expiration of the year. A similar conflict is graphically pointed out, and deplored, by the Supreme Court in a comparable statute analyzed in United States for Use and Benefit of Alexander Bryant Company v. New York Steam Fitting Co., 235 U.S. 327, 337 et seq., 35 S.Ct. 108, 59 L.Ed. 253.
 
 
 6
 The court must seek a reasonable reconciliation of the two provisions consistent with the over-all congressional policy represented by the legislation.[6] In District of Columbia v. American Excavation Co., 64 F.Supp. 19 (D.D.C.), Judge Holtzoff, for reasons not challenged in this court until now, held in 1946 that the one year limitation was not jurisdictional or a bar in all circumstances to a claim subsequently filed. He explicitly recognized judicial expressions to the contrary[7] but considered them not to be controlling. In the case before him the creditor had filed an independent suit, apparently unaware of one previously filed in which he sought to intervene more than a year after the date of final settlement.
 
 
 7
 We find no case defeating a claim filed within the time allowed by a published notice but later than a year from the date of final settlement.
 
 
 8
 There are decisions, however, which characterize the notice provisions as directory only and which subordinate those provisions to the one year limitation. In these cases, however, the most important of which is New York Steam Fitting Co., supra, it was the surety which sought unsuccessfully to attach overriding importance to the notice requirement — a requirement which the Court pointed out was not for its benefit but for that of creditors. More precisely the surety contended that the time for bringing suit was cut down from a year by at least three months and three weeks so as to permit the published notice to fall entirely within the year. The Court rejected this contention, referring to Vermont Marble Co. v. National Surety Co., 213 F. 429 (3rd Cir.). There it had been held that the notice requirement was directory only, a view the Supreme Court approved when, as in Vermont Marble, the surety sought refuge in a provision intended to benefit creditors. The fact is that in Vermont Marble the creditors' claims were filed within the year period. The court simply rejected the surety's contention that the absence of notice to creditors defeated recovery by them.[8] We take note also of United States v. Scheurman, note 5, supra. There a creditor's action on the contractor's bond was not commenced in sufficient time before the expiration of one year to permit the prescribed publication of notice to other creditors. In rejecting the surety's contention that this defeated the action itself the court also pointed out that such publication was for the benefit of creditors and not the surety. The opinion does state, however, inconsistently with our position in these cases, that regardless of notice the one year limitation binds creditors who might intervene. We note also United States for Benefit of Rhode Island Covering Co. v. James Miles & Son Co., 55 F.2d 249 (D.Mass.), which relies upon New York Steam Fitting Co., supra, to the effect that the provision for publication is merely directory. There, too, however, the failure to give notice was urged by the contractor and its surety as a defense to claims which had been filed by materialmen. None of these cases is quite like ours.
 
 
 9
 United States ex rel. for Use and Benefit of Texas Portland Cement Co. v. McCord, 233 U.S. 157, 162, 34 S.Ct. 550, 58 L.Ed. 893 is cited by appellant for the proposition that a statute like this creates a new liability and gives a special remedy, from which it is said to follow that the statutory limitations become a part of the right conferred and if not complied with defeat liability. But the case did not involve the internal conflict within the statute which characterizes these appeals. It was concerned only with the necessity of compliance with the time limitation upon the filing of the first complaint of a creditor.
 
 
 10
 Notwithstanding opinions leaning to the contrary in cases distinguishable insofar as the actual holdings are concerned, we think the creditors' claims before us were properly allowed, though filed later than a year from the date of final settlement.[9] Both the limitation and the notice provisions have statutory prestige. Neither can stand intact without infringing upon the other. Accepting these claims of Flowers and Reading did not improve their position on the merits, or disadvantage that of appellants. The ambiguity and internal conflict within the statute justify resort to equitable considerations since the law supplies none of a controlling character. Affirmance flows from giving significant weight, absent personal notice, to the statutory provision for published notice, but does not leave open-ended the time for filing claims. The notices here began to run well within the year.
 
 
 11
 We do not reach the question whether in some circumstances the one year provision takes on a jurisdictional status.[10] See United States v. Robinson Constr. Co., note 7, supra, involving the analogous Heard Act, 40 U.S.C. § 270, since superseded by the Miller Act, 40 U.S.C. §§ 270a, 270b, 270c. The ultimate holding did not go beyond the following:
 
 
 12
 The statute does not provide that the giving of notice is a condition of the limitation to one suit.
 
 
 13
 8 F.Supp. at 623.
 
 
 14
 The partial reconciliation of the conflicting provisions which we adopt in these cases is fortified to a degree by the legislative renovation of Section 804 set forth now in 1 D.C.Code § 804b, note 1, supra. Under these new provisions each creditor's rights are independent of those of other creditors. Each is able to control his own limitation period by filing his own suit within one year from the time he furnishes the last of his labor or materials to the prime contractor. This cures for the future the problems arising from Section 804. Under that section a claimant's limitation period seemingly is controlled by third parties, the prime contractor and the District. The steps they take are beyond a claimant's control and may be beyond his knowledge, such as the date of completion and final settlement. In the present cases this date is not entirely free of uncertainty.[11]
 
 
 15
 Thus, Flowers represented to the District Court that appellants' —
 
 
 16
 * * * Motion to Dismiss is based upon the defendants' [appellants'] position that final settlement of the prime contract took place on December 15, 1966, whereas by letter dated April 12, 1967 defendant Hughes advised this intervenor [Flowers] that final settlement had not taken place and might be delayed for as much as ninety (90) days. * * *
 
 
 17
 and Reading represented that —
 
 
 18
 * * * [it] is a Pennsylvania corporation and is unfamiliar with the local procedures involved in protecting its rights under the bond. * * * Further it is shown * * * that this claimant did inquire of counsel for the defendants [appellants] concerning its unpaid balance by letter dated June 7, 1967, which letter was never answered, and that it later inquired directly of defendant Reliance by letter dated December 26, 1967, which letter Reliance did not answer for thirty (30) days or eighteen (18) days after the one-year limitation had expired. * * *
 
 
 19
 We do not imply that appellants actively misled Flowers and Reading. We note these circumstances so as to indicate that the ascertaining by subcontractors of the date of final settlement can be difficult. Neither Flowers nor Reading received personal notice of the suits in which they had to intervene; and the three months following the only notices given extended beyond the one year period.
 
 
 20
 The notice provisions are for the benefit of creditors; and no sufficient reason leads us to rule other than that these claims could be considered on the merits, filed as they were within the time allowed by the notices actually given, each of which had begun its course well before the expiration of the one year period.
 
 
 21
 Affirmed.
 
 
 
 Notes:
 1. * * * where a suit is instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. * * * And provided further, That in all suits instituted under the provisions of this section such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the District of Columbia, for at least three successive weeks, the last publication to be at least three months before the time limited therefor.
 
 
 [1]
 D.C.Code § 804 (1967)
 It should be noted that all public construction contracts awarded by the District of Columbia pursuant to invitations for bids issued after October 3, 1968, are now governed by new legislation, 1 D.C. Code §§ 804a, 804b, 804c (Supp. II 1969), repealing and replacing Section 804. Pub.L.No.90-455, 90th Cong., 1st Sess. § 8 (Aug. 3, 1968), 82 Stat. 628. In the present cases, however, Section 804 applies.
 
 
 [2]
 For purposes of this opinion we accept appellants' position that the one year period began with final settlement between Hughes and the District on the Roper contract December 15, 1966, and on the Rabaut contract January 13, 1967See Fleischmann Construction Co. v. United States, 270 U.S. 349, 358, 46 S. Ct. 284, 70 L.Ed. 624 et seq.
 
 
 [3]
 These notices by publication were pursuant to court order of November 9, 1967, requested by Noland. The court had denied Hughes' request of July 25, 1967, for notice by publication. This seems to us to have been unfortunate and perhaps erroneous, but we do not think Flowers and Reading should be disadvantaged because of it
 
 
 [4]
 Ten days remained of the one year limitation in the case on the Roper contract and 38 days in the case on the Rabaut contract
 
 
 [5]
 Compare United States to Use of Pittsburg Planing Mill Co. v. Scheurman, 218 F. 915, 918 (D.C.Ida.)
 
 
 [6]
 It is a diminishing problem, since Section 804 now has been superseded by legislation under which it will not ariseSee note 1, supra.
 
 
 [7]
 Mandel v. United States, 4 F.2d 629 (3d Cir.); United States for Use of Pen Mar Co. v. J. L. Robinson Constr. Co., 8 F.Supp. 620 (D.Md.)
 
 
 [8]
 Moreover, inNew York Steam Fitting Co. personal notice was given to creditors.
 
 
 [9]
 See note 2, supra.
 
 
 [10]
 See, e.g., United States ex rel. for Use and Benefit of Texas Portland Cement Co. v. McCord, 233 U.S. at 162-163, 34 S.Ct. 550, 58 L.Ed. 893.
 
 
 [11]
 See, e.g., Fleischmann Construction Co. v. United States, 270 U.S. 349, 358, 46 S.Ct. 284, 70 L.Ed. 624, et seq.; United States Casualty Co. v. District of Columbia, 71 App.D.C. 92, 107 F.2d 652.